No. 57.—LAUGHLIN MORRISON *et al.* plaintiffs in error, *vs.* MOSES ANN HAYS, defendant in error.

[1.] The doctrine in *Royall vs. The Lessee of Lisle and others,* (15 *Ga. Rep.* 545,) re-affirmed.

[2.] If one merely enters upon land and commits a trespass, and then goes off and another comes after and commits a trespass, in such case there is no continuity of possession : for whenever the first trespasser quit the possession the *seizin* of the true owner is restored. But the several possessions may be tacked so as to make the continuity efficacious where there is a privity of estate between the successive tenants, or the several titles are connected.

[3.] If illegal testimony is allowed by the party to go to the Jury, without objection, it is no ground for a new trial, under the Act of 1853–'4.

[4.] Whether the defendant's possession be in subordination to the title of the true owner, depends upon the character of the possession. If consistent with the idea of paramount title in another, it is in subordination ; otherwise it is not. In England, where lands are generally cultivated by a tenantry, the doctrine of adverse possession is not so liberally construed as in this country, and especially in the newer portions of it, where the occupant of land is usually the owner of the soil.

Ejectment, in Calhoun Superior Court. Tried before Judge PERKINS, November Term, 1855.

This action was brought by Laughlin Morrison *vs.* Moses Ann Hays for a tract of land. On the trial, the plaintiff showed a perfect chain of title. Defendant relied upon the Statute of Limitations. The proof was, that Thomas S. Hunt took possession of the land in 1842, built a house thereon and cleared a part of the land, lived there in 1843. In 1844, Thomas Street lived there, and in 1845, Bagwell lived there ; in 1846, McDonald lived there, and in 1847, Hays, husband of defendant, lived there. Hunt made a deed to this lot to Sutton 1st October, 1845. Sutton conveyed to McDonald 10th November, 1845. McDonald conveyed to Owens 1st July, 1846, and Owens conveyed to Hays 2d September, 1846. The Court admitted the sayings of Street, while in possession, that he was tenant for Hunt ; also of Bagwell,

while in possession, that he had rented the land from John McQuordale as agent for Hunt, and the sayings of Hunt that McQuordale was his agent. This evidence was not objected to by plaintiffs when admitted.

The Jury found a verdict for defendant for the whole lot of land.

A new trial was moved for—

1st. Because the verdict was contrary to law and evidence, and the weight of evidence.

2d. Because it was contrary to the charge of the Court, which was, that the defendant, or those under whom she claimed, must have been seven years, next before the commencement of the action, under claim of title in the continued possession of the land.

3d. Error in the Court in admitting the sayings of Street, Bagwell and Hunt.

4th. Error in the Court in declining to charge as requested, that every possession is, *prima facie*, in subordination to the true title, and the *onus* to show that it is not is upon those claiming adverse possession.

The Court refused a new trial, and plaintiff excepted.

LYON & CLARK, for plaintiff in error.

CARUTHERS; McDOUGALD; WARREN, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] In the case of *Royall vs. The Lessee of Lisle and others*, (15 *Ga. R.* 545,) this Court say : " We understand the doctrine to be briefly this : the person owning the title to land is constructively in possession, and this possession continues until some adverse claimant goes into the occupancy, with intent to claim the fee, as against the true owner ; and this intention may be manifested by declarations or by acts of ownership, which are open, notorious and visible."

We re-affirm the doctrine thus succinctly stated ; and ta-

king that case as our guide, we are clear that this verdict was contrary to law and evidence, and the charge of the Court; and that the finding should have been for so much of the lot of land as was not inclosed and cultivated by the defendant. He was not in for seven years under *paper title*, nor was his possession, as to so much of the lot as was unenclosed, of such a character as to amount to an assertion to the world that he, *bona fide*, claimed the fee as against the true owner and every body else. His adverse possession, therefore, was confined to the *possessio pedis*, or corporeal occupation.

It is argued by Col. McDougald, with much ingenuity, that the very action itself admits the possession, by the defendant, of the *whole* lot; else why, he asks, sue for the whole? Why not limit the writ to so much as is in the actual occupancy of the defendant, and enter upon the balance as vacant? The answer is this: the present tenant is in possession of the *whole* because she occupies a part under *paper title;* and such was the character of the possession for five years before the ejectment was brought. Previous to that there was *possessio pedis* only, so that the present tenant, although constructively in possession of the whole, has a statutory title only to this *possessio pedis;* still, the necessity of including the entire lot in the writ is obvious, because, at the commencement of the suit, Mrs. Hays was in the possession of the whole, being in the possession of a part under *paper title* to the whole.

If authority was needed to show that judgment may be given for the residue, where the defence is good only for a part of the premises, it is abundant. (*Underwood ads. Jackson,* 1 *Wend.* 95 ; *Clay vs. White, et al.* 1 *Munf.* (*Va. Rep.*) 162.)

[2.] One of the necessary elements of adverse possession is, its *continuity ;* and it is argued by Col. Clarke, that such adverse possession is not efficacious, when taken successively by different persons. This depends upon the circumstances of the case. We think the better doctrine is, that where several persons enter on land in succession, the several posses-

sions cannot be tacked so as to make a continuity of possession, unless there is a privity of estate, or the several titles are connected. (7 *Serg. & Rawle*, 177; 5 *Met. R.* 15; 3 *Wash. C. C. R.* 475; 6 *Pick.* 415; 20 *Ibid*, 465; 9 *Cowen*, 653; 10 *Johns.* 475.)

[3.] As to the evidence of McQuordale, as to what Hunt said, we concede that it was illegal; but not having been objected to by the plaintiff, it is no ground for a new trial, even under the stringent Act of 1853–'4. It cannot be said to have been *admitted* by the Court; it went to the Jury by the implied consent of the party. And the maxim, *non fit volenti*, applies. Suppose a party expressly agrees that incompetent testimony shall go to the Jury—can he get a new trial because, in the language of the Statute, illegal evidence was admitted? Surely not.

[4.] The Court was asked to charge, that *every* possession was in subordination to the title of the true owner. The Judge properly refused so to instruct the Jury. It depends upon the nature of the possession. Is it consistent with the idea of paramount title in another? If so, it is subordinate; otherwise, it is not. The line of demarcation cannot be accurately drawn.

[5.] In England, where the whole country is cultivated by tenantry, the rule requested would generally apply. Not so much, however, in this country, and especially at the South, where almost every occupant of land is the owner and "lord of all he surveys."