No. 33—WILLIAM D. CONYERS, Administrator, &c. plaintiff in error, *vs*. RICHARD KENAN, ADDISON KENAN, and JOEL W. HAND, defendants in error.

[1.] What constitutes adverse possession.

[1.] What portion of the premises may be considered in the occupant's possession.

[3.] How far fraud is a good replication to the plea of the Statute of Limitations.

[4.] A defective conveyance, or a deed with one witness, or a transfer on the back of a deed, or a bond for titles, is sufficient to give color of title; and a person holding possession under such instrument for seven years, will be protected by the Statute of Limitations, notwithstanding he may know of the defect or infirmity in his title.

EJECTMENT.—Brought by John Doe *ex dem*. William D. Conyers, Administrator of Andrew Smith, deceased, *vs*. Richard Roe, casual ejector, and Richard Kenan, Addison Kenan, and Joel W. Hand, tenants in possession, and tried before Judge FLOYD, in Newton Superior Court, September Term, 1847.

For the facts of the case, and the charge of the Court below,

Conyers *vs.* Kenans and Hand.

and the errors assigned, the reader is referred to the opinion delivered by the Supreme Court.

WM. W. CLARK, for the plaintiff in error, made the following points, and relied on the authorities cited.

No act or deed which is void can give color of title. 2 *Peters' R.* 241. 7 *Mass. R.* 383. 9 *Wheat. R.* 551. 11 *Wheat. R.* 90. 1 *Burr. R.* 397.

If the deed would give color to a *bona fide* purchaser, without notice, were Hand and Charles Kenan such purchasers ? 2 *Cruise's Dig. on real property*, 253. *Powell on Mortgages*, 562 4 *Kent's Com.* 165. 4 *Mass. R.* 637.

A defective title will give color, but it must be believed to be a sound title. *Angell on Lim.* 428, 430. 2 *Mason's R.* 536. 9 *Wend. R.* 511. 5 *Cowen's R.* 346. 8 *Ib.* 589. *Prince Dig.* 162.

STARK and JONES, for the defendants in error, insisted that the plaintiff's remedy was barred by the Statute of Limitations, and cited the following authórites : *Doe ex dem. Reddick vs. Leggett,* 3 *Murphy's R.* 539. *Heirs of Hill vs. Heirs of Hilton,* 2 *Idem,* 14. *Strange vs. Durham,* 2 *Bay's R.* 429. *Jackson ex dem. Roosevelt vs. Wheat,* 18 *Johnson's R.* 40. *Smith vs. Burtiss,* 9 *Johns. R.* 180. *Jackson vs. Ellis,* 13 *Johns. R.* 120. *Jackson ex dem. Preston vs. Smith,* 13 *Johns. R.* 407. *Allen vs. Miller,* 17 *Wend. R.* 202. *Leonard vs. Pitney,* 5 *Wend. R.* 30. *Troup vs. Ex'rs of Smith,* 20 *Johns. R.* 32. *Angell on Lim.* 55, 435, 436, 437. 1 *Kelly's R.* 380.

Upon the question of fraud, cited the following authorities; 5 *Barn. & Cress.* 149. 3 *Barn. & Ald.* 626. 2 *Brod. & Bing.* 73. 3 *Sugden on Vendors*, 336, 317, 316, *note* 1, 321. *Paschal vs. Davis,* 3 *Kelly's R.* 256.

*By the Court.*—LUMPKIN, Judge, delivering the opinion.

This was an action of ejectment brought in the Superior Court of Newton county, by William D. Conyers as administrator of Andrew Smith, deceased, to recover lot No. 310, in the 9th district of what was originally Henry county. On the trial, the plaintiff read in evidence, the grant from the State of Georgia to his

intestate, dated 11th day of April, 1832, proved his letters of Administration in March, 1838, and the possession of the defendants at the time the suit was commenced, the 3d of September, 1844, and closed his case.

The defendants pleaded the general issue, and the Statute of Limitations. They submitted to the jury five deeds, purporting to have been made in 1836, by the heirs at law of Smith, the grantee and intestate of the plaintiff, to one Thomas Anderson, to the land in dispute. They next offered a deed from Charles to Richard Kenan, dated 1st of December, 1836—a deed from John J. Carmichael to Joel W. Hand, made in 1832 ; and on the back of this conveyance, an assignment from Joel W. Hand to Charles Kenan, without date, sealed and attested by one James Gaston, and proven to have been executed in the early part of the year 1833. A deed from Joel W. Hand to Richard Kenan was introduced, dated in 1838, but not delivered till the following year. It was in proof that administration was granted in 1834 on the estate of Andrew Smith, to Gideon Cotton, by the Court of Ordinary of McIntosh County, where the intestate lived and died. John Costly went into possession of the land in 1832, built a house thereon, and made some other improvements, but under what authority it does not appear from the testimony. Costly was continued on the land as the tenant of Charles Kenan, by agreement to that effect shortly after Hand transferred the title to Kenan, and remained there until displaced by Richard Kenan. There was some proof that during the tenancy of Costly, Hand and Charles Kenan were in the practice of cutting timber off the land, to be sawed at a mill in the neighborhood, of which they were the joint proprietors. Neither of them ever resided on the lot.

Plaintiff in rebuttal tendered considerable testimony, to impeach the validity of the defendants' title. He proved that there was but one Andrew Smith in the 271st District G. M. McIntosh county, at the time of giving in for draws in the land lottery. That he died in 1826, and that his administrator, Gideon Cotton, died in 1835. He showed from the records, that John J. Carmichael first took a deed in 1832, and which was registered in June of that year, from Andrew *O.* Smith, formerly of Tatnall and afterwards of Thomas county, and another deed from the same man in 1833, which was registered in 1838, in which last deed Smith

was persuaded reluctantly to omit the middle letter of his name, in order that the conveyance might correspond with the grant. Several witnesses swore that Charles Kenan admitted that his title was not good, and that he must make his money by cutting and sawing timber off the land; and further, that he stated in 1828, that he believed that the drawer of the lot had removed, and that if the land was occupied, it could be held. Hand gave Carmichael for the land some old executions, which he had against him, and which he looked upon as insolvent. He acknowledged that he did not believe that Carmichael's deed was good, it not being in the name of the right owner. Carmichael and Hand were both informed, prior to the purchase by the latter, that Andrew Smith, the right owner, was dead.

Upon this testimony, the defendants in the Court below, moved the Court, through their counsel, to charge the jury, 1st, that the deed from the heirs of Smith, the grantee, to Anderson, showed the title out of the plaintiff.

This instruction the judge refused to give, but did charge the jury, that, admitting these feoffees to be the genuine heirs at law of Smith, still they could not, by disposing of their interest in the real estate of the intestate, defeat a recovery in a suit for the land at the instance of the administrator, unless it was shown that the land had been turned over to them in the due course of administration.

Counsel for the defendants next requested the judge to charge the jury that William D. Conyers, the plaintiff, was not the rightful administrator of Andrew Smith, deceased. This charge also, he refused to give, but did instruct the jury that he considered the question, as to the authority of the plaintiff to maintain this action, as no longer open. It had been already contested, before the proper courts, and solemnly adjudicated in favor of his competency, and notwithstanding he doubted the correctness of the decision, still he felt bound by it.

Upon the third and last ground, mainly relied on in the defence, to wit, the plea of the Statute of Limitations, there is some ambiguity in the instructions, resulting no doubt, from the multiplicity and complication of the facts. The judge stated that he was not prepared to deny that naked possession, continued for seven years, might not, under certain circumstances, protect the occupant; but that it was not necessary to express any opinion

on that point, as the defendants claim under written title.    That they must first satisfy themselves whether the defendants, and those under whom they claim, had by themselves and their tenant, been seven years in continued and peaceable possession of the premises in dispute, next immediately preceding the commencement of the plaintiff's action, under color of title.    But that if they found that either Carmichael, Hand, or Charles Kenan, participated in the fraud alleged to exist in the defendant's title, or had actual knowledge thereof, *not from the mere statements or suggestions of persons having no connection with the property, but from* authentic or reliable sources, that then the conveyances made to or by them respectively, which were thus infected, were void, and did not afford even colorable title, so as to protect the defendants under the plea of the Statute of Limitations.    That the transfer on Carmichael's deed from Hand to Charles Kenan, though informal as a deed, was nevertheless admissible to explain the nature of the tenant's possession, and was good for that purpose, unless tainted with fraud.    That if the adverse possession of the defendants commenced in the lifetime of Gideon Cotton, the first administrator, that it was not arrested by his death, but continued to run against his estate.    Otherwise, it could not operate against the present plaintiff, until March, 1838, when his right to sue accrued.

The jury having returned a verdict for the defendants, the plaintiff, by his counsel, excepted *to the charge of the Court* upon the Statute of Limitations.

1st.  Because the Court erred in instructing the jury that a purchaser for a valuable consideration, would not be affected by the fraud of his vendor, in obtaining his title, unless he participated in that fraud, or had notice of it.

2d.  In holding that a purchaser for a valuable consideration, in order to be affected by the fraud in the title of his vendor, must participate in that fraud or have actual notice thereof, and that the mere statements or suggestions of others not connected with the property, were not sufficient for that purpose.

3d.  In charging that Richard Kenan, the defendant, was entitled *to* the protection of the Statute, if Hand and Charles Kenan, his immediate feoffees, held adverse possession of the land in the life-time of Gideon Cotton, the first administrator.

And 4th.  In ruling that the transfer to Charles Kenan by Hand on the back of Carmichael's deed, accompanied by the deed, was sufficient to create color of title.

Conyers *vs.* Kenans and Hand.

In the argument, counsel for the plaintiff in error discussed the following propositions :

1. No deed which is void, can give color of title.

2. If a void deed would give color to a *bona fide* purchaser, that Hand and Charles Kenan were not such.

3. That for a defective title to give color, it must be believed to be sound.

It will be perceived that some of the grounds taken in the bill of exceptions, have been abandoned, and that the *second* point stated in the brief of defendant's counsel, presents a question of fact which has been passed upon by the Jury, and is not examinable by this Court. The matter for us to determine, is not whether the verdict was in accordance with the testimony as to the *mala fides* of Hand and Charles Kenan, but whether or not there was misdirection in the Court below, in submitting the law to the Jury, applicable to this branch of the case.

[1.] Not only have different Courts decided differently as to the nature and character of the possession which will protect a defendant in ejectment under the plea of the Statute of Limitations, but the same Court has decided differently at different times. Under these circumstances, we feel ourselves almost untrammelled by authority, and free to decide the questions made by this record, as *res integræ.*

And why, I would ask, is not every possession of the land of another, *prima facie* adverse? I have never been able to answer this question satisfactorily to my own mind, nor has the reasoning in any of the reported cases sufficed to remove my doubts. This possession, *presumptively* adverse, will be negatived of course, when it is made to appear that the parties claim under the same title, when the possession of one party is consistent with the title of the other, when the party claiming title has never, in contemplation of law, been out of possession, and when the possessor has acknowledged title in the claimant. But until some evidence is offered by the plaintiff, under some one or more of these heads, as rebutting, it has always appeared to me an act of supererogation to require the defendant to show that his possession was under claim of title hostile to the real owner, or something equivalent to this. It is shifting the burden on the wrong party. The defendant stands upon his possession, of itself, a just means of holding property. If continued peaceably for seven years, and

acquiesced in, why, when another seeks to disturb him, should he be called on to produce proof to justify or sanction that possession? On the contrary, should not he who claims to be the true owner, shew that the possession of the defendant is in subordination to his title? As was properly observed, however, by my brother Floyd on the trial below, this point may be postponed to a more convenient season.

[2.] Another interesting inquiry arising out of the pleadings in this case, is, how far or to what extent will the occupant be protected in his possessory title? The usual opinion is, that in the absence of *paper title*, there must be not only an actual, but a substantial inclosure—2 *Johns.* 230,—a *possessio pedis*—" definite, positive and notorious." And that even the felling of trees and lapping them one upon another around the lot, will not suffice to make out adverse possession. But is not this giving to the Statute too narrow and limited an operation? While it is allowed to be one of most benign tendency, it would seem that the constant and persevering efforts of the Courts has been to emasculate it of its vigor and efficacy, by the most ingenious exceptions and subtle limitations. If one goes into possession under written title, it is conceded that he holds adversely to the extent of his boundary. But suppose he designates metes and bounds by notorious marks, as chops, blazes, setting up stones and such like, and uses the land within them for all necessary purposes, as his own, by cutting timber for building, sawing, &c., is there any good reason for restricting his possession to the mere ground that his house occupies, or to the fence which incloses it? Such, at any rate, is not the ordinary sense and understanding of men as to possession. Whenever the extent of the occupant's possession can be clearly ascertained in any way, it would seem that he should be entitled to the protection of the Statute within these limits.

[3.] But we pass on to a still graver point, and one which has a more immediate bearing upon the matter in hand. How far is fraud a proper replication to a plea of the Statute of Limitations? In *Paschal vs. Davis,* (3 *Kelly,*) this Court held, that *at law,* fraud was no proper reply to the Statute, provided it was known to the plaintiff. The Courts in New York have gone far beyond this, and the doctrine is there well settled by a train of adjudications that fraud will not deprive the defendant of the protection of the Statute, notwithstanding the plaintiff did not discern the fraud,

Conyers *vs.* Kenans and Hand.

until within the time limited for the commencement of the suit. *Troup vs. the Executors of Smith*, 20 *Johns.* 32. *Leonard vs. Pitney*, 5 *Wend.* 30. *Allen vs. Mille*, 17 *Wend.* 202. And the same doctrine seems recently to have been ruled in the Courts of Common Pleas and King's Bench in England, with some modification. In *Brown vs. Howard*, *(2 Brod. & Bing.* 73,*)* fraud was relied on to take the case out of the Statute of Limitations; Parker, J. said, " I am of the same opinion with the Chief Justice, although this is a case of such hardship on the plaintiff, that the Courts would, if it were possible, get out of the course of the decisions. But they cannot set aside the express words of the Statute or the decisions which seem exactly in point. What are the words of the Statute ? " All actions of account and upon the case, shall be commenced and sued within six years next after the cause of such action or suit accrued, and not after." In *Batley vs. Faulkner*, the point was well put by one of the Judges. " The only question is, when the cause of action accrued? For the Statute then attached. I think the cause of action accrued the moment the defendant failed to perform that which he agreed to do." In *Granger vs. George*, *(5 Barn. & Cress*, 149,*)* it was held that the Statute of Limitations is a bar to an action of trover commenced more than six years after the conversion, although the plaintiff did not know of the conversion until within that period, the defendant not having practised any fraud, in order to prevent the plaintiff from obtaining that knowledge at an earlier period.

But in the case of *Sherwood vs. Sutton*, *(5 Mason*, 143,*)* this doctrine has undergone a thorough examination by Judge Story, and the conclusion at which he arrives is, that concealment of the fraud by the defendant is a good replication to the plea of the Statute of Limitations. He does not view this as an exception out of the words of the Statute, but he considers the fraud as continuing during the whole period of its concealment, thus knitting it to the original wrong; and he affirms broadly that there is not to be found a single case in England, during the period of two centuries after the enactment of the Statute of 21 *Jas.* 1, (which is the foundation of all the Acts of Limitation in this country,) in which a Court of law has been found to deny the application of the doctrine to suits at law ; and more than a century ago, the very question was put by the House of Lords to all the Judges, and no trace can be found of any adverse opinion given by them.

After an elaborate review of the English cases, beginning with *Bree and Holbeck, (Doug.* 655,) decided by Lord Mansfield, he comments on the American authorities, which, with the exception of the New York cases, he declares to be all one way, and in conformity to the doctrine in *Bree and Holbeck,* to-wit: that the cause of action ought not to be considered as accruing until the plaintiff could obtain knowledge that he had a cause of action. And with great deference to Chief Justice Spencer, who established the precedent in *Troup & Smith,* Judge Story thinks that if his own luminous judgment in the subsequent case of *Murray & Coster, (*20 *Johns.* 576,) had been before him, he would not have been disposed to carry the principle quite so far as he did.

Impressed with a deep and just sense of my own inferiority in the presence of these great magistrates, I shall avoid the odium of pronouncing judgment between them. Both of them are gone. " Who shall wear their armour? What arm shall again bend their bow? What glory can panegyric add to the simple story of their achievements ?"

Let us rather ask, in the light of the foregoing principles, how stands the charge which is complained of? Judge Floyd instructed the jury, not only that the adverse possession of the defendants must have commenced during the existence of the first administration upon the estate of Andrew Smith, but that even then the Statute would not protect them if they participated in the fraud imputed to their title, or had knowledge of it, and that too although they went into possession under written title. And this is the sum and substance of the whole of his instructions, except as to the sufficiency of the assignment from Hand to Charles Kenan, to give colorable title. Had the verdict been for the plaintiffs, and the defendants had excepted, we should have been constrained to have awarded a *new trial ;* for if we adopt the New York decisions as the authoritative exposition of the Statute of Limitations, then it was a good bar, notwithstanding the fraud was perpetrated by the defendants, and actually concealed from the representatives of the estate of Smith until the Statute attached. But if in the conflict of cases, this Court should feel it to be its duty to adopt the opinion of Judge Story, as built upon the better reason and most consonant with public justice, still it was material to have stated to the Jury, that they must be satisfied that the plaintiff and his predecessor in the administration, were

ignorant of the fraud ; for it is agreed, pretty generally, that the Statute will run from the period when the party entitled to sue, discovers the fact. The first deed from Andrew O. Smith to Carmichael, conveying this lot of land, was recorded in 1832, several years prior to the first administration ; and the second deed between the same parties, was registered in 1838, the same year that the second administration was granted. And it would seem that these facts, of themselves, independent of any thing else, would have put the representatives upon enquiry ; and if pursued with ordinary diligence and prudence, would have led to a timely discovery and exposure of the whole transaction. The most favorable case which I have found for the plaintiff, was *Gregg vs. the Lessee of Sayre and Wife, (8 Peters, 244.)* And even there, the Supreme Court of the United States say, " Even if the grantor in the deeds be justly chargeable with fraud, but if the grantees did not participate in it, and when they received their conveyances, had no knowledge of it, there can be no doubt but that the deeds do give color of title, under the Statute of Limitations." This is the very language of the Judge below, *in totidem verbis;* and we see no error in the charge by which the *plaintiff* is aggrieved.

[4.] Upon the assignment from Hand to Charles Kenan, the position occupied by the counsel of Conyers, is, that no deed which is void, can give color of title, and to sustain this proposition, several cases are cited from Wheaton. By reference to them it will be found that they were all decided upon the *Tennessee* Statute of Limitations. And there the possession of the defendant is a protection, only when held under a grant as *valid* mesne conveyances, or a paper title, which is legally or equitably connected with a grant.

Again, it is insisted, that for a defective title to give color, it must be believed to be a sound title. The inference is, that as this title was *fraudulently* obtained, it could not be available as the foundation of an adverse possession. I need not controvert this doctrine, whether true or not. The Court charged the jury, that if they believed the defendants were cognisant of the fraud in the title, it did not protect them ; thus virtually affirming the proposition contended for. The error, then, if there be any, was in the jury, and not in the Court. The finding may be contrary to the weight of evidence, and I am inclined to think that it was. For under the direction of the Court, it amounts nearly to this—that

there was no fraud connected with the title, which was known to the parties, or shared by them—that they made the entry upon the land *bona fide*, relying upon their title, and believing the land to be theirs.

The case of *Frambois vs. Jackson*, (8 *Conn.* 589,) relied on by counsel in support of the last ground urged in the argument, contains much that I believe to be sound law, and it seems to me fully corroborates that portion of the charge which is excepted to, touching the transfer from Hand to Charles Kenan. The Court of Errors ruled, among other things, that it is not necessary that an adverse possession, in order to be available within the Statute of Limitations, should commence under an effectual deed; that although the paper title be defective, yet the character of the defendant's title as adverse, is not affected by the defects of his title. *That if the entry is under color of title, the possession will be adverse, however groundless the supposed title may be.* That even a claim under an executory contract as a bond to convey, if the consideration has been paid, is sufficient to give color of title. That a claim of title makes the possession adverse, *however groundless the claim may be,* and this may be matured into a perfect title, either against the individual or the public. That possession and improvement, such as is customary with owners, will, of itself ripen into a title, unless the possessor recognises the title in another, or disavows title in himself. Other courts have gone even beyond this, believing that the Statute of Limitations is calculated and designed to give repose to the community, and to protect men in the enjoyment and possession of property, which they have held and been improving at great expense and labor, for the better part of their lives, and that public policy dictates that even waste lands should be immediately settled and rendered productive by cultivation, in order that the power and resources of the State should be fully developed, have held, that a person accepting a defective title to land, going into possession under it *knowing the defect*, may, nevertheless plead the Statute of Limitations in bar against any action, brought for the recovery of the land. 2 *Bay*, 429. And that although the original possession was wrongful, yet if it is uninterrupted, with actual, notorious occupation, claiming the land as his own, *whether at first the entry of the tenant was with or without color of title*, the entry of the rightful owner is tolled or taken away, and the Statute of Limitations is a bar to any possessory action which the owner can bring. 4 *Verm. Rep.* 155.

For the purpose of putting an end to strife and litigation, we are inclined to side with those who construe the Statute most liberally, believing, as we do, with the Court of King's Bench, in *Green vs. Pruitt*, (2 *Salk.* 422,) that it ought to be favored because the security of all men depend upon it.

Let the judgment of the Court below be affirmed.