ENCKING vs. SIMMONS, Administrator, etc.

(1) *Construction of statutes.*   (2–9) *Foreclosure of mortgage by advertise-ment when mortgagor insane— R. S., ch.* 154, *sec.* 1 —*When such fore-closure sale fraudulent — Equitable relief.*   (9) *Proper parties to equit-able action.*

1. General words in a statute must receive a general construction; and if there is no express exception, the court can create none.

2. Sec. 1, ch. 154, R. S., declares that "*every* mortgage of real estate con-taining a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement;" and the court cannot make an exception in favor of insane persons.

3. Any person who, knowing another to be *non compos mentis*, takes unjust or improper advantage of the fact, is deemed in law to have perpetrated a *fraud;* and the transaction by which such advantage is sought to be secured, will be held void.

4. Where a mortgage with power of sale was foreclosed, and the property bid in by the mortgagee at less than half its value, and then sold to defendant at a slight advance, both mortgagee and defendant knowing mortgagor to be insane: *Held*, that the sales should probably be regarded *in law* as fraudulent and void.

5. Equity will always set aside a sale of the land of a person *non compos mentis*, when it is for the benefit of such person to do so, and injustice will not be thereby done to other parties.

6. Even if the mortgagee did not know, in this case, that the mortgagor was insane when the sale was made, equity will set aside the sale, it appearing that the parties can be placed *in statu quo*.

7. The action being to restrain the mortgagor's administrator from selling the land to pay debts of his intestate, and the defendant having asked that the mortgage sale under which plaintiff claims be set aside, and the title adjudged to be in defendant as administrator, subject to a lien for the amount found due on the mortgage, the relief should be granted.

8. It appearing also that there are no funds of the estate with which to redeem from the mortgage, the court below should probably direct a sale of the land by the administrator, and payment from the proceeds to the plaintiff, of the unpaid principal and interest accrued on the mortgage, *less* the rents and profits of the land while in plaintiff's possession.

9. The mortgagee having covenanted, in case the land should be redeemed from the mortgage sale, to repay plaintiff so much of the price paid by him for the land as was in excess of the amount of the mortgage debt, costs, etc., for which the mortgagee bid it off; *quære*, whether, for the protection of plaintiff's interests, the mortgagee should not be made a party to the suit.

APPEAL from the Circuit Court for *Fond du Lac* County.

The complaint alleges that plaintiff is the owner in fee and in possession of certain described real estate, and derived his title thereto from one Johan Gretman, late of said county, deceased; that defendant, as administrator of the estate of said Gretman, has advertised to sell said real estate at public vendue, at a place and time designated, and will so sell it and will.

convey it, unless restrained, etc.; and it asks for a judgment permanently restraining such sale, and requiring defendant to release to the plaintiff all his claim to the premises, etc., and also asks for an injunctional order pending the action. The answer alleges that in 1868 said Johan Gretman died intestate seized in his own right in fee simple of said premises; that for about three years prior to his death he was an insane person, incapable for that reason of transacting any business or being a party to any legal proceedings; that no guardian or committee was ever appointed for or over his person or his property, in his lifetime, but for about two and a half years before his death he was confined as an insane person in the poor house of said county, where he died; that while Gretman was so insane and so confined, one John Meggers, of Sheboygan county, well knowing of his insanity and confinement, fraudulently and unlawfully caused to be foreclosed by advertisement a certain mortgage upon said premises, executed by said Gretman to said Meggers to secure the payment of $300, with interest thereon at 10 per cent., bearing date February 17, 1863; that this was done for the purpose of unlawfully and fraudulently obtaining title to the premises for the amount due upon said mortgage, with interest and costs, when in fact the premises then were and still are worth at least $1200; that upon a supposed sale of said premises by virtue of said supposed foreclosure, in August, 1867, they were sold to Meggers for $451.57; that afterwards, on the same day, Meggers unlawfully and fraudulently pretended to assign the certificate of sale of the premises to the plaintiff; that plaintiff then and there well knew that Gretman was and for a long time previous had been insane and confined as aforesaid, and conspired with Meggers to obtain title to the premises for much less than they were worth; and that plaintiff has since obtained from the sheriff a deed of said premises founded upon said sale, and has no other title or claim to them. The answer then sets up defendant's appointment, etc., as administrator of the estate of said Gretman, the license issued

to him by the probate court to sell said premises for the pay-
ment of debts, etc., etc. Prayer, for judgment against the plain-
tiff that said foreclosure by advertisement, and all proceedings
antecedent thereto, be set aside; that said sheriff's deed be
cancelled; and that plaintiff pay the costs of this action; and
for general relief.

The court found the facts as alleged in the complaint, and
rendered judgment for the plaintiff; from which the defendant
appealed.

*Coleman & Thorp*, for appellant, contended that the statute
authorizing the foreclosure of mortgages by advertisement (ch.
154, R. S.) has no application to persons under disability, but
only to persons capable of receiving the notice prescribed by
sec. 2 of said statute (*Carew v. Johnston*, 2 Sch. & Lef., 303;
*Hunt v. Lee*, 10 Vt., 297); and that in any event, as the pro-
ceedings in such foreclosure are wholly ex parte, and the mort-
gagor has no day in court, equity will interfere where justice
may require, and especially where the rights of persons under
disability are concerned. 5 Bacon's Ab., "Idiots and Lunatics,"
25, 26; 4 Kent's Comm., 217, 218; 2 id., 582, 583; 1 Story's
Eq. Jur., § 229, p. 220; *Sturges v. Longworth*, 1 Ohio St., 544;
*Allis v. Billings*, 6 Met., 415.

*J. M. Gillet*, for respondent, argued that our statute (differ-
ing in that respect from the New York statute) provides only
for publication of a notice of the sale, and not for service of
any notice upon the mortgagor, his heirs or legal represen-
tatives, or subsequent incumbrancers; that plaintiff purchased
without notice of any fact which created a defect in Meggers'
title; that Meggers himself was an innocent purchaser, without
notice of Gretman's insanity; that the effect of the sale is
determined by the statute, which is entirely unambiguous, and
should not be changed by interpretation. *Ogden v. Gliddon*, 9
Wis., 46; *Woodbury v. Shackleford*, 19 Wis., 55; 20 Pick., 2;
1 Cow., 356; 5 Barb., 393; 2 Wheat., 25; *Stowell v. Zouch*, 1
Plowd., 353; *Demarest v. Wynkoop*, 3 Johns. Ch., 141; Sedgw.

Stat. & Con. Law, 245–46, 295, 308–311; *Doe v. Shaud*, cited in 4 Term, 306; *Beckford v. Wade*, 17 Ves. Jr., 87; *Ellis v. Paige*, 1 Pick., 43. Counsel also argued that the dispute here was between the defendant and a mere creditor; and that the sale was valid as against creditors, even if voidable as against the mortgagor.   *Warner v. Blakeman*, 36 Barb., 501.

DIXON, C. J. The-statute authorizing the foreclosure of mortgages by advertisement includes by its very terms *every* mortgage of real estate containing a power of sale, and makes no exception in favor of insane persons, idiots, lunatics, infants or others under disability.   The language is :   " Every mortgage of real estate, containing a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement, in the cases and in the manner hereinafter specified."   R. S., ch. 154, sec. 1.   The proposition, however it may once have been held or considered, that the courts, upon what is termed an equitable construction or otherwise, may, against the plain language of a statute and in opposition to the intent clearly expressed by the words, mitigate the "violence of the letter" by introducing exceptions where the statute itself contains none, so as to relieve in cases of hardship or particular inconvenience, has been too long and too frequently rejected to be now the subject of serious argument or doubt.   Such doctrine, if it ever existed, was long since exploded, and the rule now universally recognized and acted upon is, that whatever else may be done with the words of a statute, they may never, in the language of Lord BACON, "be taken to a repugnant intent."   See the language of KENT, Chancellor, in *Demarest v. Wynkoop*, 3 Johns. Ch. R., 142, and of Lord TENTERDEN, C. J., in *Brandling v. Barrington*, 6 Barn. & Cress., 475.   When, therefore, the statute says that *every* mortgage containing a power of sale may be foreclosed by advertisement, and makes no exception of a mortgage upon lands belonging to an insane person, such mortgage cannot be excluded from the operation of

the statute, because that would be repugnant to the intent as clearly expressed by the words. The words cannot be taken to a repugnant intent. In such case, the language of the statute being general, that *every* mortgage containing a power of sale may be thus foreclosed, and the particular mortgage not being excepted, the established rule of interpretation is, that general words must receive a general construction. This rule has been oftenest applied, and is most frequently exemplified, in cases arising under statutes of limitation; but it is equally applicable to any other statute. It was applied to the statute of limitations in the case of *Woodbury v. Shackleford,* 19 Wis., 55. But in the recent case of *Harrington v. Smith,* [*ante,* p. 43], this court had occasion to apply it to a statute of a different kind, and to refer to and examine several leading authorities bearing upon and illustrating its application. In *Collins v. Carman,* 5 Md., 533, cited in *Harrington v. Smith,* the court, speaking of the rules that general words in a statute must receive a general construction, and if there be no express exception the court can create none, say : " If these are the rules which apply to the statute of limitations, it is difficult to perceive why they should not be equally applicable to other statutes." And they were so applied in that case, and several authorities cited to sustain the application.

We are of opinion, therefore, that there can be no limitation or restraint put upon the statute by construction on the part of this court, so as to exclude from its operation the case of a mortgagor who is insane at the time of foreclosure. The statute plainly authorizes such foreclosure ; and so far as that authority goes, neither the proceedings of the mortgagee nor the title of the purchaser can be lawfully disturbed.

But although such is the situation of the purchaser and the nature of the proceedings upon a proper construction of the statute, we are still of opinion that there exist other grounds upon which the sale must be set aside, and the title remitted to the mortgagor or his legal representative as it stood before the

mortgage was foreclosed. Those grounds we will now proceed to state.

The mortgage was foreclosed and the premises sold on the 15th of August, 1867. The advertisement was dated, and publication commenced, the 22nd of June previous. Gretman, the mortgagor, was then insane, and had been continuously so for nearly three years. He was taken insane, according to the witness Treleven, in October, 1864. He had been an inmate, confined as an insane person, in the poorhouse of Fond du Lac county from the 11th of November, 1865. The mortgaged premises were situate in Fond du Lac county, where Gretman resided and had continued to reside from about the year 1860, part of the time perhaps upon, and always, until he was taken insane, in the vicinity of, the mortgaged premises. His ownership of the land and the fact of his insanity appear to have been well known in the neighborhood. The plaintiff in this case, who claims title by virtue of the sale, lived in the same county, and was apprised of Gretman's insanity a considerable time before he purchased. He was informed of it by the witness Sheridan, in the month of March or April, 1867, when Sheridan employed him to find out the mortgagee and set in motion the proceedings by which the mortgage was foreclosed. The premises were bid off by the mortgagee at the sale, and on the same day transferred to the plaintiff, who took an assignment of the certificate of sale from the mortgagee and also an agreement from him to refund the purchase money, or so much of it as should not be realized from the redemption, in case the land should be at any time redeemed within the time provided by law. The mortgagee did not reside in the county of Fond du Lac, but in the adjoining county of Sheboygan, and claims to have been ignorant of the mortgagor's insanity. The circumstances of the case are such as to create great doubt of the truth of this statement, although the mortgagee so testifies. He had been well acquainted with Gretman for years. Gretman had lived with him, and worked upon his farm, for three years

prior to 1860; and between that time and 1863, when the mortgage was executed, it seems that he saw him several times. He testifies that he visited the mortgaged premises more than once; that no part of the principal or interest was ever paid upon the note and mortgage; and that upon ascertaining that three years' taxes were unpaid on the land, he went to Fond du Lac to see about it, and paid the taxes. As to no part of the principal or interest having been paid, there is some testimony tending strongly to show that this was not so; but whether it was or was not, it is certainly most extraordinary that the mortgagee, familiarly acquainted with Gretman, holding the mortgage against him for more than four years without payment of principal or interest, visiting the mortgaged premises, and paying the taxes which Gretman had neglected to pay, should not have ascertained Gretman's condition and the fact that he was insane and confined in the county poorhouse. We say this is most extraordinary; and if the relief demanded by the administrator depended upon such knowledge on the part of the mortgagee, we should not hesitate to find the fact. Added to the foregoing facts and circumstances under which the mortgage was foreclosed, the premises sold and title acquired by the plaintiff, is the further and most important fact that the premises were bid off by the mortgagee at a price considerably less than one-half their actual cash value at the time, and were by him immediately transferred to the plaintiff at an advance, though not for a sum exceeding one-half their value according to the lowest estimate given by the witnesses. The mortgagee, Meggers, purchased for $451.57, the amount claimed to be due for principal and interest on the mortgage and the costs of foreclosure, and sold to the plaintiff for $500. The lowest cash value put by the witnesses is $1,000, and from that to $1,200.

Upon these facts the question arising is, whether the effect of the statute authorizing the foreclosure by advertisement can be avoided, and the sale set aside and title restored on the ground of fraud. We are of opinion that the effect of the statute can be

so avoided and the title restored as if no sale had taken place. We think the sale was, under the circumstances, fraudulent at law as well as in equity; but if not the former, then certainly the latter.

We need not advert to the general principle that fraud vitiates all contracts and proceedings, even records and judgments of the most solemn character. Nor need we enter into any argument to show that proceedings, however sufficient and correct in form, which are taken for the clearly ascertained purpose of despoiling an insane person or lunatic of his property and estate, are fraudulent. No one will deny that such proceedings are against conscience, and wrong. "Such persons," says Judge STORY, "being incapable in point of capacity to enter into any contract, or to do any valid act, every person dealing with them, knowing their incapacity, is deemed to perpetrate a meditated fraud upon them and their rights. And, surely, if there be a single case in which all the ingredients proper to constitute a genuine fraud are to be found, it must be a case where such unfortunate persons are the victims of the cunning, the avarice, and corrupt influence of those who would make an inhuman profit of their calamities. Even courts of law now lend an indulgent ear to cases of defense against contracts of this nature, and, if fraud is made out, will declare them invalid." 1 Story's Eq. Jur., § 227. It is true, the learned author was speaking more especially of contracts, but what he says is also to the purpose here. It shows that the true and only ground upon which courts of law as well as equity interfere to protect and restore the property of insane persons, and such as are otherwise *non compotes mentis*, is fraud. And it shows furthermore, that any person, who, knowing the incapacity of parties so situated, takes unjust or improper advantage of it, is deemed in the law to perpetrate a meditated fraud. If, therefore, the mortgagee in this case knew Gretman's insanity, as we are compelled to believe, and, instead of foreclosing by suit in equity, where a guardian would be appointed and the mort-

gagor's rights and interests protected, resorted to the foreclosure by advertisement in order to obtain title to the land in that way for half its value, either for his own benefit or for the benefit of the plaintiff in this action, who knew all the facts, it was an active, genuine fraud on the part of both. It was no less and no better than any other cunning or contrivance devised and executed *malo animo* to deprive an insane man of his property. It was the making an inhuman profit from his calamites, from corrupt and avaricious motives, spoken of by Judge STORY with so much and such just abhorrence. It was a fraud on the law itself or statute authorizing such foreclosure, if a fraud of that kind ever existed. And such fraud, in our judgment, avoids the effect of the statute in favor of the parties who have committed it.

There is, for example, very much and very high authority for saying that the bar of the statute of limitations may be avoided at law for fraud in the party seeking to take advantage of it. *Sherwood v. Sutton*, 5 Mason, 143 ; *Bree v. Holbeck*, Doug. R. 655 ; *Jones v. Carroway*, 4 Yeates, 109 ; *Persons v. Jones*, 12 Ga., 371 ; *First Massachussetts Turnpike Co. v. Field*, 3 Mass., 201 ; *Homer v. Fish*, 1 Pick., 435 ; *Welles v. Fish*, 3 Pick, 73 ; *Farnam v. Brooks*, 9 Pick., 212, 246 ; *Bishop v. Little*, 3 Greenl., 405 ; *Cole v. McGlathry*, 9 Greenl., 131 ; *Brickner v. Lightner's Ex'r*, 40 Pa. St., 199 ; *Bicknell v. Gough*, 3 Atkyns, 557 ; *Carlisle v. Foster*, 10 Ohio St., 198, *Conyers v. Kenans and Hand*, 4 Ga., 308. How does the question of avoiding the effect of the statute under consideration for actual fraud, differ from that of avoiding the effect of the statute of limitations for the same cause ? It seems to us there can be no difference.

The proposition that recoveries or proceedings of any kind, even upon just title or lawful claim or demand, may be falsified and set aside for fraud, or as it is termed in the old books, for covin, is by no means a new or strange one. " In civil suits," says Sir WM. DE GREY, Chief Justice of the Common Pleas, delivering the unanimous opinion of all the judges in the

*Duchess of Kingston's* Case (decided in 1776), 2 Smith's Lead. Cas., [*578], " all strangers may falsify, for covin, either fines, or real or feigned recoveries ; and even recovery by a just title, if collusion was practiced to prevent a fair defense ; and this, whether the covin is apparent upon the record, as not essoigning or demanding the view, or by suffering judgment by confession or default ; or extrinsic, as not pleading a release, collateral warranty, or other advantageous pleas." And that the covin, or secret agreement or purpose carried out to the prejudice of another, may be such as is or is not apparent upon the record, see likewise opinion of MOLYNEUX, J., in *Wimbish v. Talbois* (4th Ed. VI., 155), Plowden, 49. " And these two cases " says MONTAGU, C. J., in the same case, 54, " are so adjudged in our books, which prove that covin may be where the title is good, and the title shall not give benefit to him that has it, by reason of the covin, for the mixture of the good and ill together makes the whole bad, and the truth is obscured by the falsehood, and the virtue drowned in the vice." And again, 55, he says : " For as the King's subjects are born to inherit land and other things, so are they born to inherit and enjoy the laws of this realm, and every man alike may have the benefit of the law, and the common presumption is that every man chooses to accept it. But the contrary appears in the woman defendant, for when she was impleaded in the *formedon*, she had not view nor was essoigned ; and it is to be presumed that she had cause of voucher, inasmuch as the tail is so old, and she did not vouch, but lost the advantages given her by the law ; and also she came the first day (and therefore was not amerced) and said that she could not deny the action ; all which things prove openly a covin, and as the common saying is, *it hath meat in its mouth*." And in Jacobs' Law Dictionary, (ed. 1756), title " *Covin*," the author, citing *Bro. Covin*, 47, Co. Litt. 357, and other authorities, says : " On recovery by a good title, there may be covin : as where the tenant for life, by assent, &c., suffers a recovery by *nil dicit* without making any de-

fense.    And if a man hath a rightful and just cause of action, and of covin and consent shall raise up a tenant by wrong against whom he may recover, the covin doth so suffocate the right, that the recovery, although upon good title, shall not bind." And see *Sevier v. The Justices of Washington County*, Peck's R., 353, 355. " The powers and processes of the law are given for the purposes of justice. * * * To prevent the authority with which the law clothes its officers from being abused, per‑ verted or exceeded, the law sternly proclaims, in the language of Lord HOLT, ' that no lawful thing can be founded on a wrong‑ ful act '; that no valid rights shall be builded on a founda‑ tion of fraud, official oppression, or abuse of official power, or *perversion by individuals of the law's machinery or authority.* There is too much temptation to do this, but ' the wise policy of the law has put the sting of disability into the tempta‑ tion,' by declaring that those who abuse it shall reap no ad‑ vantage therefrom." *Patterson v. Pratt*, 19 Iowa, 361, 362. See also *Philipson v. Earl of Egremont*, 6 Ad. & Ellis (N. S.) 587, (51 E. C. L. 587, 605.]

It clearly appears to us, that if a case can be presented where covin in law or fraud upon legal process should suffocate the right or nullify a recovery or title obtained, or where, as ex‑ pressed by Lord COKE (Thomas' Coke, 591) " the wrongful man‑ ner shall avoid the matter that is lawful," this is such an one. It seems to us that it should be so at law as well as in equity; but, as we have already observed, whether it is so at law or not, it clearly is in equity.

In equity the proceeding was fraudulent, and the sale will be set aside, whether the mortgagee knew of the morgagor's insan‑ ity or not. This will always be done where it is for the benefit of the person *non compos mentis*, and where injustice will not thereby be done to the other parties to the transaction, or they can be placed *in statu quo*. No injustice will be done here. The plaintiff will be entitled to the redemption money so far as that goes, and for the rest he has the bond or covenant of the mort‑

gagee for repayment. The mortgagee will have the full amount of his debt and interest, which is all he can require. The parties may be placed *in statu quo.*

In equity the case seems to fall within the third kind of fraud enumerated by Lord HARDWICKE in *Chesterfield v. Janssen,* 1 Leading Cases in Equity, [*472], namely, fraud which may be presumed from the circumstances and condition of the parties, and which goes farther than the rule of law, which is, that it must be proved, not presumed. But it is wisely established in the court of chancery to prevent taking surreptitious advantage of the weakness or necessity of another; which knowingly to do, is equally against conscience as to take advantage of his ignorance. But see Smith's Manual of Equity, Title "Actual Fraud," pp. 67–70.

Judge STORY, in the work above referred to, and in the sections immediately following that quoted from, covers the whole ground of equity upon this subject. 1 Eq. Jur., §§ 228, 229. He says: "But courts of equity deal with the subject upon the most enlightened principles, and watch with the most jealous care every attempt to deal with persons *non compotes mentis.* Whenever, from the nature of the transaction, there is not evidence of entire good faith (*uberrimæ fidei*), or the contract or other act is not seen to be just in itself, or for the benefit of these persons, courts of equity will set it aside, or make it subservient to their just rights and interests. Where, indeed, a contract is entered into with good faith, and is for the benefit of such persons, such as for necessaries, there courts of equity will uphold it, as well as courts of law. And so, if a purchase is made in good faith, *without any knowledge* of the incapacity, *and no advantage has been taken of the party,* courts of equity will not interfere to set aside the contract, *if injustice will thereby be done to the other side, and the parties cannot be placed in statu quo,* or in the state in which they were before the purchase."

"And not only may contracts and deeds of a person *non*

*compos* be thus set aside for fraud, but other instruments and acts of the most solemn nature, even of record, such as fines levied and *recoveries suffered by such a person*, may in effect be overthrown in equity, although held binding at law. For, although courts of equity will not venture to declare such fines and recoveries utterly void, and vacate them, yet they will decree a re-conveyance of the estate to the party prejudiced, and hold the conuzee of the fine, and the demandant in the recovery, to be a trustee for the same party." And if the mortgage had been foreclosed by suit in equity without the appointment of a guardian *ad litem*, or without answer from such guardian, it would have been error for which the decree would have been reviewed and reversed upon bill or action for that purpose. *Sturges v. Longworth*, 1 Ohio State, 544, and authorities cited.

It follows from these views that the court below should have granted the relief asked by the defendant in his answer. The foreclosure proceedings and the sale should have been set aside, and the deed thereupon executed canceled, or the title adjudged to be in the defendant as administrator of the estate of Gretman, subject to the lien or incumbrance for the amount found due upon the mortgage. It appears that the defendant was proceeding to sell the premises under the license and order of the probate court, when the plaintiff commenced this action to restrain him. It also appears that the land in question was all the estate or property of which Gretman, the mortgagor, died seized or possessed, and, consequently, that the defendant has no funds in his hands belonging to the estate with which to redeem from the mortgage. Under these circumstances, the proper course would probably be for the circuit court to direct a sale of the mortgaged premises in this action, and that the administrator pay over to the plaintiff, out of the proceeds, the sum due upon the mortgage when the same shall be ascertained. And to this end it may become necessary that investigation be had as to the amount due upon the mortgage, and the fact determined whether any payment or payments have been made. And an account

of the rents and profits of the estate in the hands of the plaintiff may also be required; and for his protection it may likewise be necessary to make the mortgagee a party. We give no positive directions upon these points, as we are not fully enough possessed of the facts to justify it, but make these suggestions for what they are worth to the court below and to the counsel and parties, supposing the nature of the case to be such as to render them applicable and proper.

*By the Court.*— Judgment reversed, and cause remanded for further proceedings according to law.