JOHN R. JENKINS, plaintiff in error, *vs.* JAMES W. MEANS, administrator, defendant in error.

1. A written agreement, signed and sealed by the owner of a town lot, of the one part, and by certain contractors for building upon the same, of the other part, and attested by two witnesses, does not pass title from the owner to the contractors, the stipulations in the agreement being, that the owner will furnish to the contractors a certain described town lot, fronting about forty feet, and running back to an alley, upon which to erect two store-houses, eighteen by fifty feet each, and will furnish also five hundred dollars cash, and the excess of cost of these houses over certain similar ones previously erected elsewhere, and will, when both houses are completed, either pay to the contractors, for each house, seven hundred and fifty dollars besides such excess of cost, or execute to them warranty titles for "said lot upon which one of said store-houses is built, with all the rights, members and appurtenances to the same in any manner belonging." The owner having paid for both houses according to the terms of the agreement, has as full and complete title 'to his town lot as he had before the agreement was executed, and the contractors have no interest or estate therein.

2. Estoppel arising out of a failure to object to the erection of improvements on one's land, is not applicable to an owner who is not shown to have been aware that the improvements were contemplated or in progress.

3. Prescriptive title to land, is not established without proof of seven years continuous possession, under color of title, or twenty years of like possession where color is wanting. And, in order to connect the possession and rights of successive occupants, in computing the statutory term, it must appear that each successor held under or from his predecessor.

4. Where the plaintiff's wall forms one side of a store-room, and a narrow strip along the wall, inside of the room, constitutes a part of the premises in dispute, the yearly value of the entire room for rent, may be proved as a fact for the consideration of the jury in assessing mesne profits.

5. Mesne profits, though arising chiefly out of the improvements, and though the land, if vacant, would have been worth nothing for rent, are not to be diminished on account of the value added to the land by constructing the improvements, unless there be some evidence of what amount in value was so added, nor unless the defendant made the improvements, or they were made by some person from or through whom his claim of title was derived.

6. The boundary between two town lots being in question, due diligence requires that the records should be searched, before the trial,

for deeds from a known early proprietor, so as to see how the lots were described in early conveyances.

*a.* Discovery by the defendant in ejectment, after the trial, of a deed of which he was previously ignorant, will not be cause for new trial, where it does not appear that the deed is one under which he claims, or with which his title is connected.

*b.* When two adjoining town lots have been laid off, and numbered in accordance with a plan of the town, a conveyance of one of the lots by its proper number, will not pass title to any part of the other, though the deed describe the lot conveyed as having more front feet than it has, or could have without reducing the frontage of the other.

Ejectment.  Contracts.  Estoppel.  Prescription.  Possession.  Mesne profits.  Newly discovered evidence.  New trial.  Deeds.  Before Judge HALL.  Pike Superior Court. April Term, 1877.

William F. Williams brought complaint against John R. Jenkins for a portion of lot number 29 in the town of Barnesville, and for mesne profits.   The defendant pleaded the general issue and title by prescription.   Pending the litigation the plaintiff died, and his administrator, James W. Means, was made a party in his stead.

The jury found for the plaintiff the premises in dispute, and $25.00 per annum from the commencement of suit, for mesne profits.   The defendant moved for a new trial upon numerous grounds, unnecessary to be further set forth than as referred to in the opinion.   The motion was overruled and the defendant excepted.

SPEER & STEWART;  J. R. HUNT, for plaintiff in error.

S. C. McDANIEL, for defendant.

BLECKLEY, Judge.

According to the evidence of the county surveyor, whose survey, it seems, was made under order of the court, the land in controversy was a slip three feet eight and a half inches wide at the front, and six feet two and a half inches

wide at the rear. The plaintiff's lot was number twenty-nine, and the lot claimed by the defendant was number twenty-eight. Unless the slip was a part of twenty-nine, the plaintiff could not recover. He had a title to twenty-nine, but none to twenty-eight. The defendant pleaded the general issue, and that the action was barred by lapse of time ; the latter plea alleging, also, that the defendant and those under whom he claimed had held possession for more than seven years. A close scrutiny of the evidence in the record, has not enabled us to ascertain when, how, or under whom the defendant went into possession of number twenty-eight, or under whom he claims title or the right of possession. He introduced some straggling deeds covering that lot, but he was a party to none of them, nor did he show that he was in privity with any of the parties thereto. For this reason, and for the further reason that the clear and decided weight of the evidence is, that the disputed slip is all on number twenty-nine, those deeds cannot aid the defendant as color of title.

1. He introduced but one paper applicable to twenty-nine, and that was the building agreement, the substance of which is set out in the *syllabus*. But he was no party to that agreement, nor does he connect himself by evidence with any person who was a party to it. Were this difficulty overcome, the agreement would not serve as title, or as color of title, to any part of number twenty-nine. It appears from the evidence, that when the buildings were completed, the owner of the lot (the plaintiff) elected to pay for their erection, according to the terms of the agreement, and that the builders surrendered the buildings to him. The evidence discloses no default in making payment, of which the builders complained, or had a right to complain. That being so, they had no right to the town lot, or any part of it. In so far as the agreement was a bond for titles, it was conditional upon the future election of the owner; and when he elected as he did, and performed to the satis-

faction of the builders, the instrument ceased to be even a bond for titles.

2. The same builders erected for themselves a store-house, chiefly on number twenty-eight, but a part of it was located on the slip now in controversy, the wall of one of the plaintiff's aforesaid houses being used as one of the walls of the store-house. It is contended that failure to object to this encroachment ought to estop the plaintiff from maintaining the present action. Without ruling anything further on the theory of estoppel, it may be answered, that the defendant has not shown that he is in a position to urge the rights of the builders, since it does not appear that he claims under them; but an equally conclusive answer is, that the builders themselves could not set up the estoppel, on any evidence contained in the record, for there is no hint or intimation that the plaintiff knew that the erection of any building was contemplated or in progress. He was an aged and infirm man, and the evidence fails to establish, either that he visited the premises, or was informed of any act or purpose calling for the interposition of objection. It was represented, in the argument, that the connected improvement of both lots was embraced in the same general scheme, and that the plaintiff knew it; but we can find no trace in the evidence that he possessed such knowledge, or even that any intimation of such a scheme was ever made to him.

3. There was no prescriptive title made out, in the defendant or in anybody else; and hence, the charge of the court on that branch of the case was wholly immaterial. Under the evidence, the charge was more favorable to the defendant than it should have been. The actual possession proved, even of lot number twenty-eight, was not shown to have been continuous in any one claimant for as long as seven years, and there was no knitting together of the various fragments of possession as between successive occupants. The defendant's relation to those who had preceded him in the possession, was left wholly unexplained.

4. Evidence was admitted on the trial as to the yearly

value of the encroaching store-house for rent, as a fact for the consideration of the jury in computing mesne profits. The plaintiff's wall was one of the side walls of that building, and the premises in dispute extended along that wall, comprehending, of the interior of the encroaching store-house, a strip three feet eight and a half inches wide in front, and about four feet wide at the rear, the balance of the disputed strip towards the rear of the lot being vacant. Thus, a part of the store-house belonged to the plaintiff (if he had title to the whole disputed strip), and to arrive at the value for rent of that part, the value of the whole for rent was pertinent evidence. We think it was free from any valid objection.

5. Complaint is made that the jury did not reduce the mesne profits by allowing credit for the increased value imparted to the premises by the improvements. It is not certain but that the jury did, by some rough estimate of their own, make the most liberal deduction on account of the improvements, since the rent of the whole store was shown to be not less than $300.00 per annum, and the mesne profits found for the plaintiff amounted to only $25.00 per annum. But there was no evidence as to what value the premises in dispute derived from the improvements. It was shown that the strip, if vacant, would have been worth nothing for rent, and this was all. Whether it would have sold for more, improved in this awkward way, than without such improvements, was not disclosed. To take credit for improvements, the requisite foundation must be laid, in the evidence, of increased value. Moreover, the defendant neither erected the improvements, nor connected himself by evidence with those who did. For the rule of adjustment between improvements and rent, see Code, sections 2906, 3468; 9 *Ga.*, 440; 39 *Ib.*, 328; 47 *Ib.*, 540; 56 *Ib.*, 519, 520; 57 *Ib.*, 540; (12.)

6. After the trial, it was discovered that an old deed was upon record which conveyed lot number twenty-eight, and described it as having a breadth in front feet sufficient to comprehend a part or all of the disputed slip. This deed

was from the same person who conveyed number twenty-nine to the plaintiff, and was of older date than that conveyance. An affidavit by the defendant and his counsel states their previous ignorance of the newly discovered deed, but fails to state that they did not know that the maker of it was once the owner of the two lots. On the contrary, the record indicates that they had, or should have had, such knowledge. The controversy being substantially one of boundary, they ought to have searched the records as a part of their preparation for trial. How early deeds described the lots, was naturally a matter of inquiry; and whether early deeds were upon record, would be a question not slow to present itself in conducting the inquiry. But the newly discovered deed did not convey to the defendant, or to any person with whom he is in privity. A defendant in ejectment may prove an outstanding title in a stranger, but newly discovered evidence of such a title ought not to be, and, we think, is not, a sufficient ground for ordering a new trial. Another reason might be added in this case: the lots twenty-eight and twenty-nine were laid off, numbered and conveyed as represented in a plan of the town. If, therefore, the deed conveying twenty-eight described it as having a wider frontage than it really had, the deed would not thereby pass title to any part of twenty-nine.

On the whole, the refusal of a new trial was correct.

Judgment affirmed.