## CLARK *v.* WHITE *et al.*

1. Interrupted and discontinuous periods of possession can not be tacked so as to ripen into a good title by prescription.
2. Continuous possession for five years, and, after an abandonment for several years, a possession for six months, followed by occupancy of a storehouse for several years, but less than seven, did not make out that continuous adverse possession sufficient to create a good title by prescription under color; and, regardless of the other questions in the case, the court rightly granted a nonsuit.

Submitted July 14, — Decided August 12, 1904.

Action for trespass. Before Judge Parker. Camden superior court. October term, 1903.

Clark brought an action of trespass against White and others, for cutting timber upon a tract of eighty-seven acres. Clark claimed title by prescription under color. It appeared that he bought the land in 1877, went in possession in 1878, built a house, cleared and fenced three or four acres, lived on the place

five years, and then moved off. The garden and clearing grew up in undergrowth, the fences rotted, and the house was moved off. About twelve or fifteen years after Clark left the place, he rented it to Curtis for five years. Curtis went on the place, made some improvements, remained only for six months, and then abandoned it. There was no occupancy or cultivation of the premises by any one after Curtis left, which was from four to six years before the suit was filed; though there was evidence that after Curtis moved away, Clark permitted Frohawk to use a room of one of the outhouses to store tools and carts in. The plaintiff testified: " I do not know how long it was from the time I moved off to the time Mr. Curtis moved on, but it has not been very long since Mr. Curtis went there. He only staid a few months on the place, though he rented it from me for five years." There was testimony that Clark sometimes drove out from St. Mary's, where he lived, to look at the land. Frohawk testified: "There has been no cultivation of that land to amount to anything since Mr. Clark moved away from there. I would say that that was about fifteen or sixteen years ago that Mr. Clark lived there on the land. I am now thirty-seven years old. I was only a small boy when Mr. Clark went there. I suppose I was about from twelve to fourteen years old when he moved away. Since he moved, no one was on the land until up to the time that Curtis moved there. . . . I would say that the only cultivation of the land was that by Mr. Clark. The fences that had been built by him had all rotted down, burnt up, or been moved away, at the time Curtis went there." Some of the deeds relied on as color of title were excluded by the court, on the ground that they had not been properly attested so as to entitle them to record. It did not appear on what title the defendants relied, though there was evidence that they had been in possession of the land, cutting timber and boxing it for turpentine purposes. The court granted a nonsuit, and the plaintiff excepted.

*J. L. Sweat*, for plaintiff. *Atkinson & Dunwody, S. W. Hitch*, and *J. W. Bennett*, for defendants.

LAMAR, J. (After stating the foregoing facts.) It is unnecessary to determine whether the deeds executed out of the State had been properly attested, or whether they were duly recorded.

For if the color had been admitted, there was not such evidence of continuous possession as to ripen the same into a good prescriptive title. The plaintiff's own possession was only for five years. He moved away in 1883, tore down the house, allowed the fences to rot, and the enclosure to grow up in undergrowth. It was years afterwards before another entry; and the previous possession having been broken, and its continuity destroyed, no advantage thereof can be taken by tacking or adding it to the subsequent possession through Curtis. At any time during the interval the true owner could have entered. During this period of abandonment the true owner was in constructive possession. If the statute did not run against him, it could not run in favor of the plaintiff. Of course, one is not obliged to remain actually on the land during the entire prescriptive period. It is necessary, however, that during the whole time there shall be something to give notice that another is doing such acts or holding out such signs as to indicate the existence of a possession adverse to the true owner. As said by Chief Justice Gibson, in Stephens. v. Leach, 19 Pa. St. 262, " A man does not discontinue his possession by locking up his house in town, or suspending his cultivation in the country, provided he do not suffer the building in the one case, or the fields in the other, to be thrown open; but he is bound to continue a positive appearance of ownership, by treating the property as his own, and holding it within his exclusive control. An intention to resume a suspended intrusion, of which the owner of the title may know nothing, is short of the requirement of the statute. The question is not, what did the outgoing occupant intend, but, what did he do? Did he keep his flag flying, and present a hostile front to adverse pretentions? An adverse possession ought to be such as to challenge the right of all the world; but when an occupant evacuates the place and suffers it to go to wreck, he hauls down his colors, and his challenge is withdrawn." The same rule is recognized in *Denham* v. *Holeman*, 26 *Ga.* 183, where the court said " adverse possession is to be made out by acts which are open, visible, notorious, and *continuous*; and does not depend upon the secret purpose or intention of the intruder that he will return at his convenience, sooner or later, and reoccupy the land." " To constitute adverse possession the tenant must either remain permanently upon the land,

or else occupy it in such a way as to leave no doubt on the mind of the true owner, not only as to who the adverse claimant is, but that it was his purpose to keep him out of the land."     See also *Virgin* v. *Land*, 32 *Ga.* 572 ; *Joiner* v. *Borders*, 32 *Ga.* 239 ; *Byrne* v. *Lowry*, 19 *Ga.* 27 ; *Morrison* v. *Hays*, 19 *Ga.* 294 ; *Holcomb* . v. *Austell*, 19 *Ga.* 604 ; *Thursby* v. *Myers*, 57 *Ga.* 156 (6) ; *Jenkins* v. *Means*, 59 *Ga.* 55 (3).

Here the suit was filed September, 1900.     The witnesses testified in October, 1903.     One of these said that Curtis entered "six or seven years ago;" another that he entered "between seven and nine years ago."     Giving this the most favorable construction for the plaintiff, it would appear that Curtis had entered, at the farthest, not more than six years before the suit was filed. This was wholly insufficient to make out a prescription under that entry, even if the storing of tools by Frohawk could be treated as that open and notorious possession required by the statute.     It did not continue for seven years, nor could this period be tacked to the five years possession of Clark, which terminated in 1883. While the occupants may be many, there must be one unbroken and continuous possession for the statutory period.     A may surrender his inchoate title to B, and if B enters and maintains the possession unbroken, the two periods may be so tacked as to create a prescription in favor of B.     But disjointed, interrupted, and discontinuous periods of possession, of one or many, can not be tacked so as to ripen into good title by prescription.

<div align="center">

*Judgment affirmed.     All the Justices concur.*