## 39231. CARTER v. BECTON et al.

MARSHALL, Presiding Justice.

Joe Graham, owner of an 8 1/2-acre tract of land in Chatham County, died in 1926. He lived on the property with his niece and nephew, Diane Carter and Primus Carter, who survived Joe Graham as his sole heirs and who are related to each other as brother and sister. Primus died in 1942, survived by Prince Carter, an illegitimate son. Diane died in 1947, survived by Joe Foreman, also an illegitimate son.

At these times, illegitimate children could inherit from their mothers but not from their fathers. *Poulos v. McMahan,* 250 Ga. 354 (297 SE2d 451) (1982). Therefore, since 1947, Joe Foreman has been the sole legal titleholder of the subject property, although he and Prince operated under the assumption that they were co-owners.

Prince's evidence shows the following: He was raised on the property, and for a while after Primus' death he continued to live thereon; he fenced in portions of the property, and he allowed other people to keep hogs in the enclosed areas; he helped pay taxes on the property; he and Joe Foreman signed their names on a contract to sell the property; and he made claims that he owned the property along with Joe Foreman. However, Prince's evidence does not show that he ever excluded or ousted Joe Foreman from the property.

Prince died in 1969. Joe Foreman subsequently executed a security deed conveying the 8 1/2 acres. Prince's widow brings this action against the security deed holders, on the ground that Prince acquired a one-half undivided interest in the property through 20 years' adverse possession. The jury agreed and returned a verdict in favor of the plaintiff. The trial judge granted the defendants' motion for judgment notwithstanding the verdict, on the ground that the plaintiff's evidence failed to establish which portions of the 8 1/2-acre tract had been enclosed. As authority, the trial judge cited *Smith v. Pyles,* 210 Ga. 86 (78 SE2d 5) (1953) and cit., and *Ragan v. Carter,* 145 Ga. 320 (89 SE 206) (1916).

1. It is true that where the plaintiff claiming adverse possession without color of title goes into possession of only a small part of a described tract, but the evidence fails to distinguish the part of which he was in possession from that of which he was not, a verdict in favor of the defendant is demanded. *Smith v. Pyles,* supra; *Ragan v. Carter,* supra. However, where the plaintiff goes into possession of the entire described tract, his claim of adverse possession is not restricted "to the mere ground that his house occupies, or to the fence which

encloses it." *Conyers v. Kenan,* 4 Ga. 308, 314 (1848). Under the reasoning of *Conyers v. Kenan,* supra, we conclude that here Prince was in possession of the entire tract, notwithstanding the fact that he only fenced off portions thereof.

The evidence in this case shows that Prince Carter and Joe Foreman were co-possessors of the property, and that they were operating under the erroneous assumption that they were joint legal titleholders, whereas Joe was, in fact, the sole titleholder. The question thus presented is whether Prince acquired a prescriptive title to an undivided one-half interest in the property through his joint possession of the property with Joe. For reasons which follow, we conclude that he did not.

2. Where two or more persons without title or color of title are in joint possession of real estate, and where they are making claims to the same property adverse to each other, none has the exclusive possession necessary to establish prescriptive title through adverse possession. *Cooley v. All the World,* 247 Ga. 459 (276 SE2d 615) (1981).

3. However, where two or more persons are in joint possession of real estate, and where they are jointly claiming adverse possession as against the rest of the world, they can jointly acquire prescriptive title through adverse possession. Bank of Vernal v. Uintah County, 250 P2d 581 (Utah 1952); Anzaldua v. Richardson, 287 SW2d 299 (Tex. Civ. App. 1956); 3 AmJur2d 142, Adverse Possession, § 53.

4. But where, as here, two persons enter onto property each claiming an interest therein, he who is the true owner or has the better title is deemed to be in possession thereof unless he is dispossessed by the other person. "Adverse possession, in order to ripen into title, must be exclusive. 'Exclusive possession' means that the disseizor must show an exclusive dominion over the land and an appropriation of it to his own use and benefit. Two persons cannot hold one piece of property adversely to each other at the same time, and where two persons have entered upon land, he who has the better title will be deemed to be in possession thereof. It is therefore essential that the possession of one who claims adversely should establish as an [sic] ouster of the true owner because in the absence of ouster, the title draws to itself the continuous possession of the property. Possession not amounting to disseizin is insufficient. 1 AmJur 875, 876." Howard v. Stanolind Oil &c. Co., 169 P2d 737, 744 (Okla. 1946). Collins v. Smith, 372 P2d 878, 881 (Okla. 1962). "Where the rightful owner of real estate is in the actual occupancy of a part of his tract, he is in the constructive and legal possession and seisin of the whole, unless he is disseised by actual occupation and dispossession; and where the possession is mixed, the legal seisin is according to the legal title."

Deputron v. Young, 134 U. S. 241 (10 SC 539, 33 LE 923) (1890).

Possession to be the foundation of a prescription must be, among other things, exclusive. OCGA § 44-5-161 (a) (3) (Code Ann. § 85-402); *Cooley v. All the World,* supra. Our holding here is that Prince could not have prescribed against Joe, because Prince never dispossessed Joe from the property and, therefore, was never in exclusive possession thereof.

5. Finally, it should be noted that in order for one co-tenant to prescribe against another, OCGA § 44-6-123 (Code Ann. § 85-1005) requires actual ouster, exclusive possession after demand, or express notice of adverse possession, in addition to the usual elements of adverse possession. *Jordan v. Robinson,* 229 Ga. 761 (194 SE2d 452) (1972) and cits. In legal contemplation, Joe and Prince were never co-tenants. Therefore, we conclude that OCGA § 44-6-123 (Code Ann. § 85-1005) has no application here.

Accordingly, the trial judge's grant of the defendants' motion for judgment notwithstanding the verdict is affirmed, but for reasons different from those given in the trial judge's order.

*Judgment affirmed. All the Justices concur, except Smith and Weltner, JJ., who dissent.*

DECIDED FEBRUARY 23, 1983 —
REHEARING DENIED MARCH 9, 1983.

*James O. Wilson, Jr.,* for appellant.
*David H. Fritts,* for appellees.

WELTNER, Justice, dissenting.

This case must be governed by a proper interpretation of Code Ann. § 85-402, OCGA § 44-5-161, which provides that possession, to be the foundation of prescriptive title, must be in the right of the possessor, and not of another; must not have originated in actual or positive fraud; must be public, continuous, exclusive, uninterrupted, and peaceable; must be accompanied by a claim of right; and that permissive possession cannot be the foundation of a prescription until an adverse claim and actual notice to the other party.

I dissent because I believe that the evidence establishes, and the jury so found, that the conduct of Prince Carter and Joe Foreman was such as to fulfill, on behalf of Prince Carter, each and every element of prescription as set forth in the statute.

Under current interpretations of our statute and Constitution, Prince Carter was ineligible to inherit his father's undivided interest in the tract, while Joe Foreman was eligible to inherit his mother's undivided interest — both being born out of wedlock.

Being unaware of this perversity,[1] the two cousins acted throughout as though each were rightful inheritor and co-tenant, and each the owner of an undivided one-half interest in the tract. Foreman acknowledged fully what he and Carter thought to be Carter's interest; and Carter acknowledged equally what both he and Foreman thought to be but a one-half undivided interest in Foreman. At no time did Foreman dispute Carter's claim, and, at no time did Carter act in any way contrary to the supposition that Foreman was the owner of but an undivided one-half interest.

It is true that Carter at no time sought a total ouster of Foreman. Instead, both cousins listed the property for sale; both sold off timber and divided the proceeds equally; and both held themselves out to all the world and to each other as co-tenants, and as owners of an undivided one-half interest.

It is well established by statute that "[t]here may be no adverse possession against a co-tenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession...." Code Ann. § 85-1005; OCGA § 44-6-123. This code section cannot defeat Carter's claim, as Carter presented through his actions and conduct "express notice of adverse possession" to an undivided half interest. Nor did he seek any interest beyond that. To the contrary, Carter fully recognized that, as co-tenant, Foreman had a right equal to his own to the enjoyment, possession, and profits from the property, together with the right to sell the same. Thus, with regard to the interest which Carter's successor in title now claims, Carter's possession of the tract, as a co-tenant and owner of an undivided one-half interest therein, meets each of the statutory requirements, in that it was for the requisite period of time in his own "right" as a lineal descendant of an undisputed co-tenant; it did not originate in actual fraud; it was "public, continuous, exclusive, uninterrupted, and peaceable"; and it was "accompanied by a claim of right," specifically his mistakenly perceived right to inherit from his natural father.

I would further observe that ouster, the absence of which is relied upon by the majority, cannot be the ultimate fact in this case, as ouster is nothing more than one of a number of circumstances which may become evidence of the adversity of possession. Code Ann. § 85-1005; OCGA § 44-6-123. The inquiry is, then, whether or not there was adversity (as here there plainly was), and not whether that

---

[1] The writer considers this grossly unfair. See my dissent in which Justice Smith joined in *Poulos v. McMahan,* 250 Ga. 354 (297 SE2d 451) (1982).

adversity took the form of a given specie.

I am authorized to state that Justice Smith joins in this dissent.