## S96A1856. GEORGIA POWER COMPANY v. IRVIN et al.
### (482 SE2d 362)

THOMPSON, Justice.

Appellant/defendant Georgia Power Company brings this appeal from a judgment entered by the trial court on a jury verdict in favor of appellees/plaintiffs Irvin and Jackson, in this declaratory judgment action.[1] At issue is title to a 6.5-acre tract of land at Tallulah Gorge in Habersham County. Because the evidence supports the jury's determination that appellees acquired prescriptive title by adverse possession, subject to certain rights in Georgia Power for purposes of power generation, and finding no merit to other asserted claims of error, we affirm.

Georgia Power's claim of title emanates from a 1910 warranty deed from Sara E. White conveying to it an 11.7-acre tract in "fee simple forever"; and a subsequent corrective deed in 1911, which corrected only distances and calls in the property description. In the two deeds, Sara E. White reserved to herself certain rights in the property to operate a hotel and cottages (known as the "Pines property"), "insofar as such occupation, use and enjoyment is not inconsistent with and does not interfere with" the development of hydroelectric power by Georgia Power. The Pines property encompasses the 6.5 acres in issue. By 1913, Georgia Power had constructed a tunnel under the subject property, and by 1924 had constructed a transmission line for electric power above the property.

J. E. Harvey bought the Pines property from Sara E. White, sometime prior to her death in 1920. Harvey went into possession of the property, installed a saw and planer mill on it, openly and notoriously operated his lumber mill business, and sold lumber to others, including Georgia Power. In 1938, Harvey acquired several parcels of property belonging to Sara E. White, by executor's deed from Haddie Clarke DeSaussure, a representative of the White estate. This deed, which was duly recorded, states that ownership of the property is

---

[1] The complaint was brought by Johnny Mark Irvin and Sherrell Jackson. Jackson died during the pendency of the litigation and this appeal is being pursued by the executrix of his estate.

subject to the rights of Georgia Power. Plaintiffs offered expert opinion testimony that, although there is some discrepancy in the property description, the parcel in question was among those contained in this deed.

Throughout the 1940's Harvey continued to operate his mill on the property, and openly declared that he owned the property. When he died in 1950, the mill property was included in an inventory of his estate. Through a series of recorded conveyances among his heirs, the property was ultimately claimed by his daughter, Gussie Harvey, and T. S. Moss. Following a partitioning action in 1974, 6.5 acres were conveyed to Gussie Harvey. Throughout the 1950's, 60's and 70's, Gussie Harvey regularly entered the property, cleaned and maintained it, erected a fence on the northern sector, and according to the tax digest, paid property taxes from 1981 until 1983 (tax records prior to 1981 could not be located). It was her opinion that she owned the property. In 1984, plaintiffs purchased the 6.5-acre tract from Gussie Harvey, recorded their deed, and continued to pay the property taxes until the time of trial. They also graded, seeded, fertilized, and erected a fence upon the property.

The present dispute began in 1986 when the DOT filed a condemnation proceeding in Habersham Superior Court to obtain approximately one acre of land (a portion of the 6.5-acre tract) for the widening of Highway 441. Named in the condemnation proceeding were appellees/plaintiffs herein and Georgia Power, which asserted fee simple ownership of the property.

In 1993, Georgia Power entered into a "right of entry agreement" with the Georgia Department of Natural Resources (DNR), purporting to grant certain legal rights to the DNR with respect to the tract. Plaintiffs filed the present petition for declaratory judgment against Georgia Power and the DNR (which was later dismissed from the suit), claiming title to the land, and seeking a declaration of the rights of the parties to the property, and an injunction to preserve the status quo.

A jury verdict was returned in favor of plaintiffs. The jury rejected title by deed, but instead found that title was acquired by prescription based on seven years adverse possession under color of title both by the deed of Haddie Clarke DeSaussure, executrix under the will of Sara E. White, in about 1938; and by the deed of Mrs. J. E. Harvey and others to Gussie Harvey in about October 1955. They also found prescriptive title based on 20 years adverse possession, regardless of color of title.

1. In multiple enumerations of error, Georgia Power asserts that the trial court erred in denying its motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial, asserting that plaintiffs failed to produce evidence to support a claim of pre-

scriptive title by adverse possession, either for seven years under color of title, or for twenty years without color of title.

In reviewing the denial of a motion for judgment notwithstanding the verdict, this Court must determine whether there is any evidence to support the jury's verdict. *Sims v. Sims*, 265 Ga. 55, 56 (452 SE2d 761) (1995). The same standard of review applies from the denial of a motion for directed verdict, OCGA § 9-11-50 (a); *Morris v. Futch*, 193 Ga. App. 132 (1) (386 SE2d 905) (1989), and from the denial of a motion for new trial on general grounds. *Clark v. United Ins. Co.*, 199 Ga. App. 1 (1) (404 SE2d 149) (1991). We must construe the evidence in the light most favorable to the prevailing party, *Sims*, supra, to determine whether the elements of prescriptive title as set out in OCGA § 44-5-161[2] have been proven.

Specifically, Georgia Power asserts an absence of any evidence showing: exclusive possession by plaintiffs; which was adverse or hostile to Georgia Power; for a continuous or uninterrupted twenty-year period; or under color of title for seven years.

(a) Exclusive and continuous possession.

" 'Adverse possession, in order to ripen into title, must be exclusive. "Exclusive possession" means that the disseizor must show an exclusive dominion over the land and an appropriation of it to his own use and benefit.' " *Carter v. Becton*, 250 Ga. 617, 618 (4) (300 SE2d 152) (1983). And while "[t]wo persons cannot hold one piece of property adversely to each other at the same time," id., it has been recognized that "[a]n adverse claimant's possession need not be absolutely exclusive; it need only be a type of possession which would characterize an owner's use." 3 AmJur2d 170, 171, Adverse Possession, § 75. See also 2 CJS 725, Adverse Possession, § 54.

There was evidence that beginning with J. E. Harvey's possession in the late 1920's, and until the time that plaintiffs acquired and took occupancy of the property in 1984, plaintiffs and their predecessors in title continuously and openly possessed the property for the requisite statutory period, subject only to Georgia Power's authorized use for the generation of hydroelectric power from the Tallulah River. Georgia Power's use of the property consisted of occasionally maintaining its underground tunnel and overhead wires and supports, and periodically flooding the bottom of Tallulah Gorge — a small por-

---

[2] OCGA § 44-5-161 provides:
(a) In order for possession to be the foundation of prescriptive title, it:
(1) Must be in the right of the possessor and not of another;
(2) Must not have originated in fraud except as provided in Code Section 44-5-162;
(3) Must be public, continuous, exclusive, uninterrupted, and peaceable; and
(4) Must be accompanied by a claim of right.
(b) Permissive possession cannot be the foundation of a prescription until an adverse claim and actual notice to the other party.

tion of the disputed property — by opening the dam which controls the water level.

Georgia Power asserts that this limited use of the property constitutes joint possession by the parties, and under *Carter v. Becton*, supra, joint possessors cannot prescribe against the other in the absence of an ouster. In *Carter*, two people occupied the property under the erroneous assumption that they were co-owners, when in fact, only one was the legal titleholder. Both parties entered upon the land, shared the property taxes, jointly signed a land sales contract, and generally held themselves out to be co-owners. This Court concluded that the one without legal title could not acquire prescriptive title to an undivided one-half interest because the element of exclusive possession was absent. Instead, they were merely "co-possessors . . . operating under the erroneous assumption that they were joint legal titleholders." Id. at 618.

In contrast to *Carter*, J. E. Harvey (plaintiffs' predecessor in title) entered onto the property under color of title, acquired dominion over the land and appropriated it to his own use and benefit, subject only to Georgia Power's limited use for power generation. The question thus remains whether that limited use would, as a matter of law, defeat plaintiffs' claims of prescriptive title because the element of exclusivity has not been satisfied.

While this Court has never squarely addressed the issue presented here, a similar situation was considered in *Bushey v. Seven Lakes Reservoir Co.*, 545 P2d 158 (Colo. App. 1975). In that case, Seven Lakes acquired title by deed to certain property. Some time later, Bushey's predecessors in title took possession of the land for purposes of pasturing livestock and farming. They occupied it for the statutory prescriptive period, but during that time, Seven Lakes maintained a water basin beneath the surface, and from time to time entered the land for the purpose of maintaining and inspecting its subsurface use. Although the Colorado court recognized that joint possession of property by the record owner and an adverse claimant precludes the adverse claimant from acquiring title by adverse possession, it nevertheless concluded that use of the subsurface by the record owner as a water storage basin constituted a severance of the subsurface estate from the surface. Such use of the subsurface by the landowner "does not qualify as a joint use so as to preclude plaintiffs from acquiring the surface by adverse possession." Id., 545 P2d at 161. The court further concluded that occasional entry by the record owner onto a portion of the land for the specific and limited purpose of maintaining its subsurface use, and which was consistent with the type of possession asserted by the adverse claimant and did not interrupt his occupancy, would not defeat a claim of prescriptive title to the surface.

We are persuaded by the analysis in *Bushey v. Seven Lakes Reservoir Co.*, supra. To the extent that Georgia Power used the land in dispute, it did so only in a limited area above and below the earth's surface,[3] and only for the limited purpose of generating hydroelectric power. Georgia Power's occasional entry onto the land to maintain its lines and tunnel was consistent with plaintiffs' surface use, and did not in any way interrupt their occupancy. This Court has recognized that even a partial tract may be acquired by prescription, so long as the boundaries are clearly defined, i.e., where the evidence identifies the part which is in possession and distinguishes it from the part which is not. *Ragan v. Carter*, 145 Ga. 320 (1) (89 SE 206) (1916); *Whitehead v. Pitts*, 127 Ga. 774 (1) (56 SE 1004) (1907); *Tripp v. Fausett*, 94 Ga. 330 (21 SE 572) (1894).

Even though plaintiffs' continuous and open possession for almost an entire century was subject to Georgia Power's limited use and was therefore not "absolutely exclusive," it was consistent with ownership, and was sufficiently exclusive to satisfy OCGA § 44-5-161 (a) (3). Accordingly, we do not view Georgia Power's limited use of the property as joint possession which would, as a matter of law, negate the exclusivity of plaintiffs' possession and defeat their ability to acquire title by prescription.

(b) Adverse or hostile possession.

During the time required for the ripening of prescription, it is necessary that "there shall be something to give notice that another is doing such acts or holding out such signs as to indicate the existence of a possession adverse to the true owner." *Clark v. White*, 120 Ga. 957, 959 (48 SE 357) (1904). Hostile possession can be shown by "any use and occupation which is so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another." *Friendship Baptist Church v. West*, 265 Ga. 745 (462 SE2d 618) (1995). While in possession from the late 1920's until his death in 1950, J. E. Harvey remained permanently on the land and declared to others that he owned the property. "Declarations by a person in favor of his own title shall be admissible to prove his adverse possession." OCGA § 24-3-7 (b). See also *Wallace v. Mize*, 153 Ga. 374 (6) (112 SE 724) (1922). Harvey's declarations and occupancy left "no doubt on the mind of the true owner, not only as to who the adverse claimant is, but that it was his purpose to keep him out of the land." *Clark*, supra at 960. Thus, his possession beginning in the 1920's was adverse and without permission of Georgia Power. Likewise, the evidence established continuous acts of nonpermissive

---

[3] Ownership of real property "may be divided and subdivided in two or three dimensions, on, below or above the earth's surface." Ga. Real Est. Law, § 1-14.

possession while Gussie Harvey and the plaintiffs occupied the property, e.g., their payment of taxes is evidence of both good faith and notoriety of possession. See *Crider v. Woodward*, 162 Ga. 743 (11) (135 SE 95) (1926).

(c) Under color of title for seven years.

Georgia Power asserts that each deed relied on by plaintiffs as color of title is overly vague and uncertain, or expressly states that it is subject to the rights of Georgia Power.

> "Color of title is 'a writing upon its face professing to pass title, but which does not do it, either from want of title in the person making it, or from the defective conveyance that is used. . . .' " "To entitle the possessor to the benefit of his color of title, there must be a writing; it must purport to convey the property to the possessor . . . [and] *it must contain such a description of the property as to render it capable of identification,* and the possessor must in good faith claim the land under it." [Cits.]

(Emphasis supplied.) *Capers v. Camp*, 244 Ga. 7, 11 (3) (257 SE2d 517) (1979).

The evidence shows that the 1938 deed from Haddie Clarke DeSaussure to J. E. Harvey furnishes a key for description, and fulfills the requirements of OCGA § 44-5-164.[4] See also *McCrea v. Ga. Power Co.*, 187 Ga. 708 (1 SE2d 664) (1939); *Warlick v. Rome Loan &c. Co.*, 194 Ga. 419 (22 SE2d 61) (1942); *Gainesville Midland R. Co. v. Tyner*, 204 Ga. 535 (50 SE2d 108) (1948). Possession by J. E. Harvey under the 1938 claim of title lasted at least 12 years, was open and notorious, exclusive, adverse, peaceable, and was not tainted by fraud. These elements of possession ripened into prescriptive title. OCGA § 44-5-161.

Alternatively, the 1955 deed from Mrs. J. E. Harvey to Gussie Harvey constitutes sufficient color of title to support the verdict of adverse possession for seven years.

(d) Without color of title for a period of 20 years.

Beginning with J. E. Harvey's possession in the late 1920's, and continuing until the present, there was evidence of possession as would satisfy OCGA §§ 44-5-163[5] and 44-5-161.

---

[4] OCGA § 44-5-164 provides:
Possession of real property under written evidence of title in conformance with the requirements of Code Section 44-5-161 for a period of seven years shall confer good title by prescription to the property. . . .

[5] OCGA § 44-5-163 provides:
Possession of real property in conformance with the requirements of Code Section 44-5-161 for a period of 20 years shall confer good title by prescription to the prop-

2. Georgia Power asserts that the trial court erred in submitting the issue of title to the jury because the specific rights of the parties to the land is a matter for the court to decide as a matter of law, rather than a factual issue for the jury.

While "[a]dverse possession is usually a mixed question of law and fact — whether the facts exist which constitute adverse possession, is for the jury to judge. Whether, assuming the facts proven to be true, they constitute adverse possession, is for the court to decide." *Thompson v. Fouts*, 203 Ga. 522 (2) (47 SE2d 571) (1948).

The court submitted a special verdict form to the jury. The jury found by a preponderance of the evidence that plaintiffs had gained prescriptive title under all three alternatives (i.e., prescriptive title based on seven years adverse possession under color of two separate deeds, and prescriptive title based on twenty years adverse possession, regardless of color of title), subject only to Georgia Power's rights to the property. The court then incorporated the jury's factual findings into the judgment and decreed title in plaintiffs. There was no error.

3. Georgia Power raises evidentiary objections to two categories of documents consisting of: (1) maps and accompanying ledgers which Georgia Power submitted to the Federal Energy Regulatory Commission to maintain its license to generate power at the Tallulah facility; and (2) correspondence and maps randomly found in Georgia Power's letter file.

Georgia law favors the admissibility of any relevant evidence, no matter how slight its probative value. Evidence of doubtful competency or relevancy should be admitted and its weight left to the jurors. *McEachern v. McEachern*, 260 Ga. 320 (1) (394 SE2d 92) (1990). As for the maps and ledgers, it was established that the documents, prepared by Georgia Power, contained admissions against interest, and were relevant to show that during the period of 1960 through 1989, agents of Georgia Power expressed the opinion that it did not own fee simple title to the property, but only possessed "full development rights."

With respect to the correspondence and maps, Georgia Power's in-house counsel testified that documents from the letter file were reliable and were maintained by Georgia Power in the regular course of its business. The evidence was relevant in that it contained an admission that Georgia Power did not own a portion of the property.

The trial court did not abuse its discretion in admitting the evidence. Id.

---

erty against everyone except the state and those persons laboring under the disabilities stated in Code Section 44-5-170.

4. After first granting a motion in limine to exclude evidence of a statutory partitioning action (between Gussie Harvey and T. S. Moss), the court admitted it with a limiting instruction. Georgia Power claims that the evidence is irrelevant to the issues before the court, and that reference to it was inflammatory and prejudicial.

The trial court concluded, and we agree, that the evidence was relevant as a portion of the chain of title by which plaintiffs were claiming. The court instructed the jury that evidence of the partitioning proceeding is without prejudice to any rights of Georgia Power and is offered for such weight as the jury may accord it to establish a chain of title to the 6.5 acres. The trial court did not abuse its discretion.

5. Georgia Power takes issue with two jury instructions, on grounds that they were not supported by the evidence:

(a) "Acquiescence for 7 years by acts or declarations of adjoining land owners shall establish a dividing line." Georgia Power owned and occupied the land adjoining the south side of the disputed property. The evidence showed acts of acquiescence and declarations between the Harveys and Georgia Power.

(b) "Failure to pay property taxes may be considered evidence of the absence of a bona fide claim of title." The evidence showed that plaintiffs had paid taxes on the property, and that Georgia Power's agent was unable to produce any documentation of payment on its part.

Both jury instructions were adjusted to the evidence.

6. Denial of a motion for summary judgment is rendered moot by the court's entry of judgment on the verdict. *Kicklighter v. Woodward*, 267 Ga. 157 (5) (476 SE2d 248) (1996).

7. We have examined Georgia Power's remaining enumerations of error and find them to be without merit.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., Carley and Hines, JJ., who dissent.*

FLETCHER, Presiding Justice, dissenting.

I dissent because appellees have not established that their possession of the property was exclusive.

It is undisputed that Georgia Power has superior written title. Georgia Power and Irvin and Jackson trace their claim to title to a common grantor, Sara E. White. White conveyed the property to Georgia Power in 1910 in "fee simple forever" with a limited reservation of rights during her lifetime. The earliest written deed claimed by Irvin and Jackson's predecessors-in-title is dated 1938.

Because Georgia Power had superior legal title, Irvin and Jackson could acquire title only through the actual ouster of Georgia

Power.[6] In *Carter v. Becton*,[7] this Court held that where two persons jointly possessed the land, one could not prescribe against the other in the absence of an ouster and that "where the possession is mixed, the legal seisin is according to the legal title."[8] In *Carter*, this Court refused to find title by adverse possession because the essential element of exclusive possession was missing.[9]

Here the evidence showed that Georgia Power continuously maintained a tunnel and towers for overhead transmission wires on the property and flooded a portion of the property on a regular basis. Georgia law provides that "[t]he property right of the owner of real estate extends downward indefinitely and upward indefinitely."[10] There is no requirement that a landowner fully occupy every inch of land or use all the subsurface and above ground rights in order to "possess" his land. Contrary to the implications in the majority opinion, the lines of the property claimed by adverse possession were never clearly defined or marked by fence by Irvin and Jackson or their predecessors-in-title. Additionally at least one-third of the property lies below the rim of the gorge and there is no evidence of possession of this portion by anyone other than Georgia Power. The evidence demonstrates that Georgia Power exercised possession of portions of the remaining property at all times since 1913. Because Georgia Power occupied and used the property consistent with its legal title, I conclude that this occupation and use cannot be construed as an ouster from the land.

The majority relies upon a doctrine enunciated in *Bushey v. Seven Lakes Reservoir Co.*[11] that primary use of the subsurface effects a severance of the surface and subsurface estates. Irvin and Jackson, however, have never argued for a severance of the surface and subsurface estates, and I find it inappropriate to decide the case on a novel theory not raised or argued by the parties. Additionally, the facts of *Bushey* are easily distinguished. In *Bushey* the disputed land consisted of a strip of land approximately two rods wide above the high-water line of two reservoirs. The record owner's deed prohibited the fencing of this area so adjoining landowners could water their livestock. After the adjoining landowner fenced and continuously farmed this area, the record owner's sole evidence of possession to the disputed land consisted of the occasional entry to spray weeds

---

[6] *Lines v. State of Ga.*, 245 Ga. 390, 395 (264 SE2d 891) (1980).

[7] 250 Ga. 617 (300 SE2d 152) (1983).

[8] Id. at 618, quoting *Deputron v. Young*, 134 U. S. 241 (10 SC 539, 33 LE 923) (1890); see also OCGA § 44-5-165 (possession must be "so exclusive as to prevent actual occupation by another").

[9] Id. at 619.

[10] OCGA § 44-1-2 (b).

[11] 545 P2d 158 (Colo. App. 1975).

and inspect the reservoir. Here, Georgia Power's possession of the surface consisted of permanent structures, which were from time to time rebuilt and the transmission lines relocated elsewhere on the property, and also flooding large portions of the surface area. Therefore, Georgia Power's use of the land is inconsistent with a theory of severance of the surface and subsurface estates.

Because the 1910 deed gave Georgia Power legal title and appellees have failed to establish their exclusive possession of the property, I would reverse.

I am authorized to state that Justice Carley and Justice Hines join in this dissent.

DECIDED MARCH 19, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997.

*Smith, Gilliam & Williams, John H. Smith, M. Tyler Smith,* for appellant.

*Forrester & Brim, James E. Brim III, Carol Ann Walker,* for appellees.

*James S. Howell,* amicus curiae.